Law Library

# IN THE SUPERIOR COURT OF GUAM

## SMALL CLAIMS DIVISION

SUPERIOR COURT OF GUAM

2013 FEB 13 AM 8:59



| | |
|---|---|
| HAYNESLY BLAKE, | ) |
| Plaintiff, | ) **SMALL CLAIMS CASE NO. SD1344-11** |
| | ) |
| | ) **DECISION AND ORDER** |
| vs. | ) |
| | ) |
| LADERA TOWERS, | ) |
| | ) |
| Defendant. | ) |

## INTRODUCTION

The matter before the Court came on Plaintiff Haynesly Blake claim against Defendant Ladera Towers for $10,000.00 for Defendant's failure to remediate mold growth from a condominium unit Plaintiff leased from Defendant. A trial on Plaintiff's claim was held before the Honorable Benjamin C. Sison, Jr. who took the matter under advisement. Plaintiff appeared Pro Se and Attorney Seaton M. Woodley, III, Esq. appeared on behalf of Defendant. Having reviewed the evidence presented and the applicable law, the Court now issues its Decision and Order.

## BACKGROUND

A lease agreement was entered into between Plaintiff Tenant and Defendant Landlord for lease of a condominium unit for a term commencing July 8, 2011 and terminating on July 31, 2012. The condo unit leased by Plaintiff was part of a larger condominium complex run by on-site managers and other employees of Defendant. Plaintiff works for the US Military and frequently travels off-island as part of his duties.

Soon after moving into his unit, sometime during the week of July 18 to July 22, 2011, Plaintiff reported to Defendant that the carpet in the area of his washer and dryer was wet. Defendant responded by installing and running a blower to dry the carpet. During the week of July 25 to 29, 2011, Plaintiff once again reported to Defendant that the same carpet was once again wet and in response, Defendant once again installed the blower to dry the carpet.

On July 29, 2011, Plaintiff informed Defendant that he would be travelling for a week and gave permission for Defendant to remove the blower from his unit in his absence. On August 7, 2011, Plaintiff returned to his unit and found that the water was turned off, furniture removed, mold on items, and the blower running to dry the carpet. The following day, on August 8, 2011, Plaintiff informed Defendant of the extent of the mold on personal items, clothes, furniture, shoes, books, and other items. Defendant informed him that Plaintiff's neighbor pointed out a water leak to and upon further investigation discovered the source of the leak was from a water pipe in Plaintiff's unit. Defendant promptly had the leaking pipe repaired.

Despite no visible signs of additional mold, on or about August 11, 2011, Plaintiff relayed his concerns to Landlord that there was a high possibility of mold under the carpet. On or about August 15, 2011, Defendant inspected Plaintiff's unit and confirmed the continued presence of mold. Plaintiff asked that the carpet be removed and replaced. In response, Defendant agreed to pay for cleaning of Plaintiff's personal items and have the carpet and vents cleaned but did not agree to have the carpet removed.

On or about August 17, 2011, a professional cleaning company, Guam Cleaning Masters, was retained by Defendant to clean the unit of mold. Guam Cleaning Masters conducted steam cleaning of the carpet, upholstery, and dining chairs but did not undertake to determine whether mold existed under the carpet. Despite this cleaning, Plaintiff informed Defendant several days later that the carpet remained heavily damp and showed Defendant that mold had since developed on drywall in the washing closet of the unit. In response, Defendant informed Plaintiff that he may terminate the lease and move upon thirty days notice. Plaintiff sought to find other accommodations and left the premises on October 13, 2011.

Plaintiff seeks damages against the Defendant in the amount of Ten Thousand Dollars ($10,000.00), the maximum allowed under Small Claims Court. In Plaintiff's schedule of damages submitted to the court, he is seeking full reimbursement for rents and utilities he paid for the period of August 7, 2011 to October 13, 2011, moving expenses, laundry cleaning, additional fuel expenses, and damage to furniture and household items. Plaintiff received Two Thousand Dollars ($2,000.00) from insurance proceeds for damage to Plaintiff's personal effects.

## DISCUSSION

The Court finds that Defendant is liable to Plaintiff for Negligence, Breach of Landlord's duty to repair the premises into a tenantable condition, Breach of the Implied Warranty of Habitability, and Constructive Eviction. A tenant may proceed against landlord on a theory of Negligence for Landlord's breach of its duty to maintain the premises in a safe condition by failing to abate mold, which may cause damage to tenant's health, safety and life. Beck v JJ Holding Corp, NY Slip Op 08162, 12 AD3d 238](2004) In this case, Defendant was made aware of a problem concerning wet carpet in Plaintiff's unit on July 18, 2011. Not withstanding whether Defendant was obligated to make these repairs under the terms of their lease agreement with Plaintiff or under law, in undertaking the repairs, Defendant is required to exercise reasonable care in discovering the source of the problem and thereafter undertaking a reasonable course of action in addressing the problem. Defendant's initial response to the situation by employing blowers to dry the carpet we believe was inadequate, as it should have taken steps to discover the reason the carpet was wet and remedy the problem rather than just the symptom. Only after being notified by Plaintiff's neighbor, a number of weeks later, did Defendant become aware of the source of the wetness: leaking pipes, which it did repair. Unfortunately by the time defendant actually discovered the problem, substantial water and mold damage to Plaintiff's personal effects and the unit had already occurred. Defendant's argument that Plaintiff exacerbated the mold problem by failing to leave on his air conditioning units while he was travelling is, in the opinion of the Court, without merit in that air conditioning units will probably not be sufficient to dry a leaking pipe, which is not repaired.

After being made aware that mold was present in the unit on August 8, 2011, Defendant did not undertake to retain professional cleaners, Guam Cleaning Masters, until August 17, 2011. During this time period, mold certainly would have continued to grow and spread. Guam Cleaning Masters did undertake to clean and remove mold from Tenant's Unit, but it failed to check underneath tenant's carpet for mold in all likelihood at the direction of Defendant because doing so would require that the carpet be removed and replaced at Defendant's expense. It is unlikely that the presence of mold would not have been discovered under carpet which has been damp or wet for months and Defendant should have taken action to determine conclusively whether all mold in the unit had been removed. Plaintiff should not be expected to take the Defendant's "word" that no mold existed under the carpet.[1] In addition to Landlord's failure to initially determine and immediately remedy the source of the leaks, Landlord's failure to check under the carpet, also constitutes a breach of Landlord's duty to properly repair the leased premises and Landlord is therefore liable to Tenant for damages proximately caused by Landlord's failure to property repair the leased premises. Moreover, Defendant has failed to repair Plaintiff's unit to a tenantable condition. Under Guam law, absent any agreement to the contrary, landlord, to a residential lease must put the property into a tenantable condition fit for occupation, and repair any subsequent dilapidations, which render the premises untenantable. 18 GCA §51101. Furthermore, a warranty of habitability is implied by law in residential leases. Green v Sumski, 10 Cal.3d 616, 517 P.2d 1168, 111 Cal.Rptr. 704 (1974). Accordingly, Defendant in this case would be liable to Plaintiff Tenant for failing to repair any condition rendering Plaintiff's unit untenantable. Defendant Landlord argues that the mere presence of mold in this case does not render the leased premises "untenantable" and therefore there is no breach of the implied warranty of habitability. This Court disagrees. Unchecked mold growth on the leased premises does pose potential health hazards to those living in close proximity to the mold. Defendant Landlord's failure or refusal to check whether mold existed under Plaintiff's

---

[1] The court is persuaded by an article provided by Plaintiff from the National Center for Disease Control and Prevention which provides that proper remediation of mold on carpet typically requires that the carpets be removed. See CDC Article: Indoor Environmental Quality.

unit constitutes a failure to repair the untenantable condition of leased premises. We further find that Plaintiff's unit was untenantable up to the time he left the unit in October 2013.

Finally, failure to repair and keep the premises in a condition suitable for the purposes for which they are leased has been held to constitute a constructive eviction. Stoiber v Honeychuck, 101 Cal.App.3d 903, 162 Cal.Rptr. 194 Defendant claims that the mere presence of mold in this case also does not constitute a constructive eviction of Plaintiff. Again we disagree. Unchecked mold growth as a result of Defendant's failure to check the carpet for mold it has reason to believe is present renders the premises unsuitable as a personal residence. The damages recoverable for wrongful eviction, actual or constructive, include whatever amounts are necessary to compensate the tenant for the detriment proximately caused by the eviction or likely to result therefrom, including expenses of removal. Id.

Turning to the question of damages, Plaintiff's request for laundry cleaning expenses and damage to furniture and household items would normally be granted as these were directly caused by Defendant's negligence. However Plaintiff has failed to provide any receipts or any documents of reasonable detail, which would verify Plaintiff's claims. In addition, Plaintiff received Two Thousand Dollars ($2,000.00) in insurance proceeds, which presumably covered the expenses and damage referenced above. Furthermore, Plaintiff's damage request in the amount of Thirty-Six Dollars and Seventy-Two Cents ($36.72) for fuel expenses is denied as there is no reliable evidence presented that these costs were proximately caused by any action or inaction of the Defendant.

Plaintiff's request for reimbursement of rents and utilities he paid for the period of August 7, 2011 to October 13, 2011 in the amount of Six Thousand Four Hundred Eighty One Dollars and Ninety Three Cent ($6,481.93)[2] is granted. The proper measure of damages for breach of implied warranty is rental abatement measured by the difference between the fair rental value of the premises if they had been warranted and the fair rental value of the premises as they were during occupancy by the tenant in the safe or unsanitary condition. Green v Sumsky, P.2d 1168 (citing Mease v Fox (1972) Iowa, 200 N.W.2d 791, 797, Boston Housing Authority v

---

[2] $5,264.46 rent, $662.85 Power, $224.62 Water and $330.00 Cable.

Hemingway (1973) Mass., 293 N.E.2d 831,845 and Academy Spires, Inc. v Jones (1970) 108 N.J. Super. 395,261 A.2d 413,417). We find the fair rental value of the leased premises at zero during the period of time Plaintiff requests reimbursement, given the high likelihood of the presence of mold under the carpet. We also grant Plaintiff's damage request for moving expenses in the amount of One Thousand One Hundred Thirty One Dollars and Thirty Eight Cents ($1,131.38) and hotel expenses in the amount of Two Thousand Seven Hundred Fifty Four Dollars and Thirty Cents ($2,754.30) as these were necessary to compensate Plaintiff for the detriment proximately caused by his constructive eviction or likely to result therefrom.

## CONCLUSION

Based upon the foregoing, the Court finds in favor of Plaintiff. Plaintiff is ordered to provide receipts for these expenses within fifteen (15) days of this Decision and Order to verify his claims.

**SO ORDERED this _____ day of _____FEB 1 3 2013_____, 2013.**

_____

**BENJAMIN C. SISON, JR., Court Referee**
**Superior Court of Guam**

I do hereby certify that this is a true and correct copy of the original on file in the office of the Clerk of the Superior Court of Guam. Dated at Hagatna, Guam.

FEB 1 3 2013

Ryan T. Bela'adie
Deputy Clerk, Superior Court of Guam